## In re ATKINS' ESTATE.

### ATKINS v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Fifth Circuit. February 25, 1929.

No. 5363.

J. D. Wilkinson, C. H. Lewis, and W. S. Wilkinson, all of Shreveport, La. (Wilkinson, Lewis & Wilkinson, of Shreveport, La., on the brief), for petitioner.

Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key and Randolph C. Shaw, Sp. Asst. Attys. Gen., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Vincent J. Heffernan, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C. (Clark T. Brown, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., on the brief), for respondent.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. As appears by the decision of the Board of Tax Appeals, the question presented in this case is whether the sum of $23,625.24, representing one-half the amount of notes given by decedent to his sons, is deductible from the decedent's gross estate in the computation of federal estate taxes. The findings of fact by the board, which are set out in full, are as follows:

"Decedent, John B. Atkins, died intestate on October 28, 1923, a resident of the state of Louisiana. Prior to July, 1922, he had given his two daughters homes and cash from time to time and kept an accurate record of such gifts. He had also given one of his sons, J. B. Atkins, Jr., certain cash. He gave his two sons to understand that, when they became of age, he would give them amounts to equal the gifts he had made his daughters. On July 1, 1922, decedent executed and gave his sons promissory notes, payable to their order. The note to J. B. Atkins, Jr., was for the amount of $8,025.48, payable on or before 5 years after date. The note given to the other son, Joe F. Atkins, was for the amount of $39,225, payable on or before 10 years after date. Both notes bore interest at the rate of 6 per cent.

"Prior to Atkins' death the amount of $10,000 was paid on the note given to Joe F. Atkins. The principal of the note given to J. B. Atkins, Jr., was paid in full by the heirs on March 25, 1924. The heirs have paid the balance on the note of Joe F. Atkins in full in varying amounts, beginning July 7, 1924, and final payment being made July 1, 1926."

On these facts the board held that the notes were without consideration and not enforceable against the estate; therefore, were not deductible. It may be conceded that, if the law of Louisiana, which must govern, section 403, Revenue Act of 1921 (42 Stat. 279), is not to the contrary, the decision of the board is right. It would be useless to discuss the authorities from other states, cited and followed by the board and relied on by respondent.

Petitioner contends that the decedent, having made donations of money to his other children, incurred the natural obligation to equalize his gifts to all his children, and having endeavored to do so by giving the notes to his two sons, as found by the board, that under the law of Louisiana this natural obligation was sufficient consideration for the notes, and they were enforceable one-half against his estate, as an obligation of the community.

The articles of the Louisiana Civil Code dealing with natural obligations are as follows:

Art. 1757. "Obligations are of three kinds: Imperfect obligations, natural obligations, and civil or perfect obligations.

"1. If the duty created by the obligation operates only on the moral sense, without being enforced by any positive law, it is called an imperfect obligation, and creates no right of action, nor has it any legal operation. The duty of exercising gratitude, charity and the other merely moral duties, is an example of this kind of obligation.

"2. A natural obligation is one which can

not be enforced by action, but which is binding on the party who makes it, in conscience and according to natural justice.

"3. A civil obligation is a legal tie, which gives the party, with whom it is contracted, the right of enforcing its performance by law."

Art. 1758. "Natural obligations are of four kinds:

"1. Such obligations as the law has rendered invalid for the want of certain forms or for some reason of general policy, but which are not of themselves immoral or unjust.

"2. Such as are made by persons having the discretion necessary to enable them to contract, but who are yet rendered incapable of doing so by some provision of law.

"3. When the action is barred by prescription, a natural obligation still subsists, although the civil obligation is extinguished.

"4. There is also a natural obligation on those who inherit an estate, either under a will or by legal inheritance, to execute the donations or other dispositions which the former owner had made, but which are defective for want of form only."

Art. 1759. "Although natural obligations can not be enforced by action, they have the following effect:

"1. No suit will lie to recover what has been paid, or given in compliance with a natural obligation.

"2. A natural obligation is a sufficient consideration for a new contract."

The law of Louisiana regulating inheritance and the relation existing between parent and child differs greatly from that of most other states and is based on the fundamental principle of equality between children. There is the reciprocal duty of support between parent and child. Civ. Code, arts. 227, 229. Children may not be disinherited, except for just causes, which are specifically mentioned, Civ. Code, arts. 1617–1621 inclusive; and are forced heirs in the distribution of the parent's estate, Civ. Code, art. 1493. If a donation has been made to a child in excess of the disposable portion, it must be reduced by collation. This "is founded on the equality which must be naturally observed between children and other lawful descendants." Civ. Code, arts. 1227–1229. That equality between heirs of the same degree is a cardinal principle of the Louisiana law of inheritance is well settled in the jurisprudence of Louisiana. Montgomery v. Chaney, 13 La. Ann. 207; Succession of Maltry, 161 La. 1032, 109 So. 827.

There could be no doubt that there is a moral obligation resting upon a parent to do equity between his children by equalizing his gifts to them during his lifetime. This is not seriously disputed by respondent, but a distinction is sought to be made between a moral and a natural obligation. As to this the contention is that the obligation of a parent to equalize his gifts to his children is not embraced in the four classes of natural obligations enumerated in article 1758, Civ. Code, and that they are exclusive.

The administration of the law of Louisiana is not hampered by technical and unsubstantial distinctions. In the absence of a positive statute, it is the duty of her courts to apply the principles of equity, appealing to natural law and reason and received usages in support of those principles. Civ. Code, art. 21. And the maxim "inclusio unius est exclusio alterius" is not always applicable in construing the articles of the Civil Code. As a rule of construction, announced in 1838, and followed ever since, the Supreme Court said in Ellis v. Prevost, 13 La. 230:

"The court cannot be ignorant of the mode in which our Codes were prepared and became laws. They were written by lawyers, who mixed with the positive legislation definitions seldom accurate, and points of doctrine always unnecessary. The legislature modified and changed many of the provisions relating to the positive legislation, but adopted the definitions and abstract doctrine, without material alteration; from this circumstance, as well as from the inherent difficulty of the subject, the positive provisions of our Code are often at variance with the theoretical part, which was intended to elucidate them; and whenever that occurs, we deem it a sound rule of interpretation, to disregard the doctrine, and consider the definitions modified by the clear intent of the positive enactments."

A reasonable construction of article 1758, Civ. Code, is that the four classes of natural obligations mentioned therein are illustrative, and not intended to be exclusive, and that any natural obligation is sufficient consideration for a new contract.

Apparently there is no Louisiana decision expressly holding that the obligation of a parent to equalize his gifts to his children is sufficient consideration for a new contract; but this, perhaps, may be because the doctrine is so well understood that no one has heretofore raised the question in the settlement of an estate. That a natural obligation is sufficient consideration for a note is well

settled by the following analogous cases: Matthews v. Williams, 25 La. Ann. 585, where a son gave his note in place of his father's note, which was prescribed; Barthe v. Succession of Lacroix, 29 La. Ann. 326, 29 Am. Rep. 330, where a note was given as a gratuity beyond his wages to an old and faithful servant, in which case the court used the expressions "moral" and "natural" obligations interchangeably; and Interstate T. & B. Co. v. Irwin, 138 La. 335, 70 So. 313, where a note was given by a bank director as a donation to make good the impairment of the capital of his bank. This last case was decided after the adoption of the Negotiable Instruments Law, also relied upon by respondent on the question of consideration. In none of these cases was there consideration for the note, other than a natural obligation. For other cases involving the same principle, though decided on other grounds, see Banta v. McSpadden, 147 La. 847, 86 So. 287; Succession of Rabasse, 49 La. Ann. 1405, 22 So. 767; Hyman v. Succession of Parkerson, 140 La. 249, 72 So. 953, L. R. A. 1917B, 694.

It is hardly necessary to discuss the Uniform Negotiable Instruments Law, adopted by the Louisiana Legislature in 1904 (Act No. 64). Except as to the elimination of days of grace, it made no material change in the law of Louisiana governing bills and notes. It is not in conflict with the articles of the Code making a natural obligation sufficient consideration for a new contract. In fact, in defining valuable consideration, section 24 provides: "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

Section 25 provides: "Value is any consideration sufficient to support a simple contract."

Applying the law of Louisiana to the facts as found by the board, the conclusion is irresistible that a natural obligation rested on the decedent to equalize his gifts to his children; that in executing and delivering to his sons the promissory notes here in question he fulfilled that obligation; that under the law of Louisiana, which is controlling, regardless of decisions to the contrary in other states, there was sufficient consideration for the notes, and they were deductible from his gross estate in the payment of estate taxes.

The petition is granted, and the judgment is reversed.